Ruffin, Chief Justice.
It is unnecessary to say much on the objections taken to the defendant’s evidence. It was offered to repel the evidence of the reputation of freedom given on the part of the plaintiff. If the plaintiff claiming under a particular act of liberation from the defendant, of record and of recent occurrence, being within the lives of these parties, could offer evidence of reputation — of which we do not stop to enquire; such evidence might be met by the proof of acts of ownership inconsistent with the reputation, and accompanied by declarations and claims of title by the defendant and others claiming on his title. The evidence of the sheriff might have been proper for another purpose, even if the plaintiff had been in legal form emancipated. She was sold under execution against the defendant, and doubtless, that sale would pass the title to Mr. London if the defendant were unable to pay his debts at the time of the emancipation, in the same manner that any other voluntary conveyance is void against creditors. In that case, the plaintiff would be the slave, not indeed of the defendant, but of London; and therefore could not bring this or any other action. But it does not appear that any such view as this was taken on the trial; and no doubt the evidence was directed to the other point; as to which we think it proper as evidence in reply.
But upon the principal question in the case our opinion differs from that of his Honor. We think the transcript of the record of the County Court, which is set out in the exception, is evidence of an actual emancipation of the plaintiff, provided her identity and that of the defendant, writh the supposed subject and actor, in the County Court be established. It purports to order that the plaintiff, in presentí, “be emancipated and set free from slavery;” and to be made on the petition of the defendant, then the owner of the plaintiff. The objections taken to this, as an act of *31 emancipation, are that there is no adjudication of the Court that the plaintiff had performed such services; that, being proved on the present trial to have been in November 1809 only two years of age, it is apparent that the plaintiff could not have performed such services, and that the Court did not and could net adjudge that she had; and that the order was inoperative unless there was a petition in writing of the defendant, alleging such services of the plaintiff, and expressing a wish-then to emancipate her.
It may be assumed — and indeed we think properly — that there was no evidence of the existence of a' petition in writing, or consequently of its contents; as a record is proved by itself, and by nothing else. But the law does not require a petition, as it appears to us. Emancipation is the act of the master, by which he renounces, his right to the services of his slave, and sets her free from him. Any act which purports to have been done with that view, would upon common law principles suffice; and in favor of liberty, -the intention might be inferred from slight acts. The legislature has however upon a ground of public policy, interposed in restraint of the power of the master. It is perhaps, a matter of doubt in the construction of our statutes whether the owner of a slave may not emancipate without the leave of the Court, so as to be an effectual renunciation of his own dominion, although it may be a forfeiture of -the slave to the public, and the proper authorities may seize and sell it. That seems to have been the law, at all events up to the year 1796; and perhaps is not altered by the act of that year. But supposing any attempt of the master to liberate a negro to be void even as to himself, unless it be done in the mode prescribed by the legislature to vest in a liberated slave all the right and privilege of a free born negro, it yet remains to be enquired what mode is prescribed by the legislature ? Upon recurring to the statute it is found to be silent as to the means or manner of emancipation, so far-as respects the agency of the owner, except only that such “liberation shall be entered of record.” Neither a previous nor subsequent deed or writing of emancipation is requisite ; nor is a written petition to the Court for a license mentioned before the act of 1830. The only memorial mentioned in- *32 the act is the record — the usual, indeed indispensable memo* r^l °f whatever is transacted in a Court of record. It is convenient and orderly to put into writing a statement of 0 the facts upon which the Court is asked to act, and to pray .specifically for the order the Court is asked to make. , It is useful to restrain attempts at imposition, and also to identify the parties. But so far as regards the form which an act of emancipation by the master is to assume so as in strict law to be valid, there is no regulation whatever in the statutes. It may be by petition, by deed, or by bare writing, or it may be oral, only it is to be recorded, whatever it may be,- and that is to perpetrate it. It seems to be supposed that a petition of the owner is requisite, otherwise the act of emancipation is not his, but altogether that of the Court. But that is entirely a mistake. The petition is only one mode of shewing the consent of the owner. The record, the entry of what he said and did in Court, is another mode equally explicit with the other, and of precisely the same grade as evidence. The only difference is, that in one case the petition shews his act only, and the minutes shew that of the Court; while in the other the minutes state both what he did and what the Court did. Here, their united act as appearing of record, and admitting of no contradiction, is expressly an immediate emancipation, of the plaintiff. If the record does not speak the truth, the Court in which it is, can alone make it do so. It imports verity upon the trial of an action of trespass between these parties, and while it stands, cannot be construed into less than a liberation of the defendant’s slave by license of the Court, granted at his instance.
■We are also of opinion that its efficacy is not impugned by its silence as to meritorious services; and that it cannot be impeached by presumption or evidence that the plaintiff had not, or could not perform them. The acts of a Court on a subject within its jurisdiction are presumed to be right; and that presumption cannot be contradicted when the Court is one of exclusive jurisdiction, whose judgments are not subject to revision. Such was the County Court when this transaction took place. The law forbad it to allow of emancipation, except for meritorious services. If the Court corruptly granted the license in an improper case,.the Judges *33 were punishable ; but the act was valid, because the.Court had the power. If it was done through error of judgment, it is still valid; because the law left it to the judgment of that Court. Had the recoi'd found the meritorious services, it is clear it could not be disputed upon evidence in this cause. It is of course, unnecessary that the record should state a fact, as the reason of the judgment, which is not re-examinable elsewhere. There is little doubt that this jurisdiction was often abused; and that for that reason it was established, or rather transfered exclusively to the Superior Courts. But while it existed, it was exclusive, and the decision final. The legislature thought proper to entrust the public security thus far in the hands of that tribunal, and the community was necessarily to abide by its acts. It is worthy of observation too, that the question is not raised between the plaintiff and the public, although the latter alone has a right to complain of a wrong decision obtained from the County Court on this point. The defendant can no more complain of it than of his own act of emancipation; for it was at his instance the Court was betrayed into the error.
Per Curiam. Judgment reversed and a venire de novo ordered.